Submitted on petitions for review filed May 27,* petitions for review denied
September 9, 1987

1000 FRIENDS OF OREGON,
*Respondent on Review/*
*Cross-Petitioner on Review,*
MASON,
*Intervenor-Petitioner,*

*v.*

LAND CONSERVATION
AND DEVELOPMENT COMMISSION,
*Respondent,*
LINN COUNTY,
*Respondent-Intervenor,*
OGDEN,
*Petitioner on Review/*
*Cross-Respondent on Review.*

(LCDC 85-ACK-120; CA A37227; SC S34044, S34067)

742 P2d 48

Edward F. Schultz, Albany, for petitioner on review/cross-respondent on review. With him on the petition was Weatherford, Thompson, Brickey & Quick, P.C., Albany.

Robert L. Liberty, Portland, for respondent on review/cross-petitioner on review.

Jas J. Adams, Portland, for intervenor-petitioner.

MEMORANDUM OPINION

Petitions for review denied.

Peterson, C. J., concurred and filed an opinion.

---

* Judicial review of order of Land Conservation and Development Commission dated July 18, 1985. 85 Or App 18, 735 P2d 645 (1987).

**PETERSON, C. J.,** concurring in denial of petition.

The Court has denied review. As writer of the opinion in *1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985), I write to state my agreement with the Court of Appeals opinion in this case.

One of the issues before the Court of Appeals was whether the local government erred in concluding that a parcel of land consisting almost entirely of Class II to IV soils was not "agricultural land" as defined in Goal 3. The specific question raised was: If land defined as "agricultural land" under Goal 3 and OAR 660-05-005 is not suitable for agricultural use, must the local government follow the exceptions process before zoning the land for commercial use?[1]

The landowner asserted that certain language concerning that question in this court's decision in *Wasco County Court, supra,* was dispositive. The Court of Appeals discussed the issue and ruled against the landowner, saying:

"The county concluded that the Ogden parcel is not 'agricultural land,' as defined in Goal 3. That goal provides that, in western Oregon, 'land of predominantly Class I, II, III and IV soils * * * as identified in the Soil Capability Classification System of the United States Soil Conservation Service, *and other lands* which are suitable for farm use [under various criteria]' are 'agricultural land.' (Emphasis supplied.) LCDC's interpretive rule, codified as OAR 660-05-005, provides in part:

" '(1) "Agricultural land" as defined in Goal 3 includes:

" '(a) Lands classified by the U.S. Soil Conservation Service (SCS) as predominately (sic) Class I-IV soils in Western Oregon and I-IV soils in Eastern Oregon;

" '(b) *Other lands in different soil classes* which are suitable for farm use as defined in ORS 215.203(2)(a), taking into consideration [various factors].' (Emphasis supplied.)

"Mason maintains that the parcel consists almost entirely of Class II to IV soils and that that in itself conclusively brings the parcel within the goal's and the rule's definition of agricultural land. Only one of Ogden's arguments to the contrary merits discussion. That argument is based on the Supreme

_____

[1] For a discussion of the exceptions process, *see 1000 Friends of Oregon v. LCDC (Curry Co.),* 301 Or 447, 458-461, 724 P2d 268 (1986).

Court's *dictum* in *1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985):

" 'Soils classified I-IV in western Oregon, or I-VI in eastern Oregon, are *presumptively* "agricultural" under Goal 3. The soil classification system identifies the nature of the soil, without consideration of environmental factors which may affect its use.

" 'The question under Goal 3 of whether an area is suitable for farm use is entirely different. The suitability determination requires a governing body to look beyond the scientific soil classification taken alone to other factors such as "soil fertility, suitability for grazing, climatic conditions, existing land use patterns, technological and energy inputs required, or accepted farming practices." *Land with soil scientifically classified as a priority soil class, e.g., Class I, may be unsuitable for farm use because of other factors, such as slope.* Conversely, land consisting of low priority soil classes may nonetheless be determined to be suitable for farm use when other factors are considered, or because that land is necessary to permit farm practices to be undertaken on adjacent or nearby lands.' 299 Or at 371-72 (Emphasis supplied.)" (Footnotes omitted.)

*1000 Friends of Oregon v. LCDC (Linn Co.),* 85 Or App 18, 21-22, 735 P2d 645 (1987).

The Court of Appeals held that an exception must be taken to designate as "agricultural land" for commercial use. The Court stated:

"* * * It may be that factors such as wetness and slope can be relevant to whether an exception to Goal 3 may be taken for land in western Oregon that consists predominantly of Class I-IV soils. However, the goal and the LCDC rule leave no room to conclude that land which is so comprised is not, *per se,* 'agricultural land,' whether or not it can be used for agriculture. Mason is also correct in his assertion that the FIC designation of the parcel requires an exception to Goal 14. *1000 Friends of Oregon v. LCDC (Curry Co.),* 301 Or 447, 724 P2d 268 (1986); *1000 Friends of Oregon v. LCDC (Linn Co.),* 78 Or App 270, 717 P2d 149 (1986)." (Footnotes omitted.) *1000 Friends of Oregon v. LCDC (Linn Co.),* 85 Or App 18, 21-23, 735 P2d 645 (1987).

*Wasco County Court, supra,* was an appeal from a county's decision to approve a petition for the incorporation of a new city, Rajneeshpuram. Three questions were presented,

the third being whether Goal 3, the agricultural goal, was applicable to the incorporation decision. The question involved in the case at bar — whether the exceptions process must be followed to permit commercial use of land defined as "agricultural land" — was not involved in *Wasco County Court.*

The Court of Appeals was correct in its analysis and holding. The quoted language from *Wasco County Court* upon which the landowner relies — "Land with soil scientifically classified as a priority soil class, *e.g.,* class I may be unsuitable for farm use because of other factors such as a slope" — does not mean that such land is not "agricultural" within the meaning of the Goal 3 definition. The quoted language simply means that land classified as "agricultural land" under Goal 3 may in fact be unsuitable for agricultural use. The Court of Appeals recognized this, and correctly held that the unsuitability of "agricultural land" for agricultural use should be considered in the exceptions process.

The confusion likely stems, in part, from the use of the word "presumptively" in the *Wasco County Court* opinion quoted above. That word should not have been used. If land is "agricultural land" under Goal 3, but is unsuitable for agricultural use, the local government can follow the exceptions process to permit other uses.